(October 3, 1916.)

THE BLACKWELL LUMBER COMPANY, a Corporation, Respondent, v. THE EMPIRE MILL COMPANY, a Corporation, Appellant.

[160 Pac. 265.]

EMINENT DOMAIN — METHOD OF EXERCISE BY PRIVATE CORPORATION — NECESSITY OF, A QUESTION OF FACT — CONFLICT OF ALLEGED PUBLIC USES — PURPORTED TRANSFER OF RIGHT OF WAY — PRIOR OCCUPATION BY CONDEMNOR WITHOUT AUTHORITY OF LAW — TEMPORARY USE.

1.   In an action wherein the condemnation of land is sought under the exercise of the right of eminent domain, the question of necessity is a question of fact, and where there is a substantial conflict in the evidence, the findings of the trial court will not be disturbed.

The question of what degree of necessity is requisite to exercise the power of eminent domain is discussed in a note in 22 L. R. A., N. S., 58.

For authorities reviewing the question of what constitutes appropriation of land for right of way by one railroad company which will prevent its condemnation by another railroad company, see notes in 12 L. R. A. 220; 13 L. R. A., N. S., 197.

On securing right of way for logging railroad under power of eminent domain, see note in 1 L. R. A., N. S., 969.

2.   The power to locate a railroad right of way by a corporation is vested in its board of directors, and some official corporate action is necessary before such corporation can make a valid location. The act of an officer of the company in making a preliminary survey of such right of way does not by itself constitute a valid appropriation of such right of way to a public use.

3.   *Held*, under the facts of this case as disclosed by the evidence, the lands of appellant were not devoted to a public use at the time they were sought to be condemned by respondent, and were subject to condemnation by respondent in proper proceedings.

4.   Where it appears that no legal or valid appropriation of land for a public use has been made, a purported conveyance thereof for such use has no validity.

5.   Prior occupation of land without authority of law by one seeking to exercise the right of eminent domain does not preclude the condemnor from taking subsequent measures authorized by law in order to condemn such land to a public use, but such illegal occupation renders the condemnor liable in trespass.

6.   Where in an action for condemnation for a logging railroad it appears from the findings of fact that the condemnor will not require the use of such road for more than one year, the court in its judgment of condemnation should limit the period of use accordingly.

[As to what constitutes public use for which property may be taken by eminent domain, see notes in **16 Am. St. 610; Ann. Cas. 1912D, 1002.**]

APPEAL from the District Court of the First Judicial District for Shoshone County. Honorable John M. Flynn, Acting Judge.

Action to condemn strip of land for right of way through defendant's property for temporary logging railroad. Judgment for plaintiff. *Modified and affirmed.*

C. W. Beale and Charles L. Heitman, for Appellant.

At common law, permanent improvements placed upon land of another by one having no interest or title therein and without the owner's consent become part of the realty. (22 Cyc. 7.)

This common-law rule has not been changed or modified by any law or statute in Idaho as applying to a trespasser.

(*Batterton v. Douglas Min. Co.*, 20 Ida. 760, 120 Pac. 827, 38 L. R. A., N. S., 1121. See, also, *Crest v. Jack*, 3 Watts (Pa.), 238, 27 Am. Dec. 353; *Wells v. Howell*, 19 Johns. 385.)

Where property has been taken for public use and become vested in the state or in a corporation or individual for such use, the right so acquired may be transferred in such manner as may be authorized by law. So long as the use is not changed, it is immaterial to the owner by whom the right is exercised. (*Crolley v. Minneapolis & St. L. Ry. Co.*, 30 Minn. 541, 16 N. W. 422; *State v. Superior Court*, 65 Wash. 129, 117 Pac. 755.)

A condemnor could not initiate an appropriation in trespass, and all acts in furtherance of such initiation were void. (*Marshall v. Niagara Springs O. Co.*, 22 Ida. 144, 125 Pac. 208.)

John P. Gray, C. H. Potts and W. F. McNaughton, for Respondent.

Where a company with the power of eminent domain enters land without the consent of the owner and erects improvements thereon, and subsequently institutes proceedings to condemn the same land, the common-law rule that a structure erected by a tort-feasor becomes a part of the lands does not apply. (15 Cyc. 763; *Goldfield Consol. Milling & Transp. Co. v. Old Sandstrom Annex Gold Min. Co.*, 38 Nev. 426, 150 Pac. 313; *Oregon Ry. & N. Co. v. Mosier*, 14 Or. 519, 58 Am. Rep. 321, 13 Pac. 300; 6 Am. & Eng. Ency. 567; *Searls v. School Dist. No. 2*, 133 U. S. 553, 10 Sup. Ct. 374, 33 L. ed. 740; *Chase v. School Dist. No. 10*, 8 Utah, 231, 30 Pac. 757, 16 L. R. A. 805; *Seattle & M. R. Co. v. Corbett*, 22 Wash. 189, 60 Pac. 127; *Calumet River Ry. Co. v. Brown*, 136 Ill. 322, 26 N. E. 501, 12 L. R. A. 84; *Illinois Cent. R. Co. v. Le Blanc*, 74 Miss. 650, 21 So. 760; *Greve v. First Div. St. P. & P. R. Co.*, 26 Minn. 66, 1 N. W. 816.)

The term "appropriated" as used in the statute means "devoted to a use." Any other construction would be repugnant to the reasons for the statute. The statute simply means that any private property not being used for a public

purpose may be condemned for purchase. (*Portneuf Irr. Co., Ltd., v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046; *Postal Tel. Cable Co. v. Oregon Short Line Co.,* 104 Fed. 623; *Colorado Eastern Ry. Co. v. Union Pac. Ry. Co.,* 41 Fed. 293; *Butte, Anaconda & Pac. Ry. Co. v. Montana Union Ry. Co.,* 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298; *Denver Power & Irr. Co. v. Denver & R. G. R. Co.,* 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383; *Chicago & M. Electric R. Co. v. Chicago & N. W. Ry. Co.,* 211 Ill. 352, 71 N. E. 1021.)

BUDGE, J.—This case has been before this court on three prior occasions, and will be found reported in 27 Ida. 400, 149 Pac. 505, 28 Ida. 556, 155 Pac. 680, and 29 Ida. 236, 158 Pac. 793. In the interest of brevity we will limit ourselves, so far as practicable, to the questions involved upon this appeal. An investigation of the above authorities will elicit a history of the case from its inception. However, at this point it may be well to call attention to the fact that this court has heretofore held that the lumbering industry of this state is one of its material resources, which can not be completely developed in the absence of the right to exercise the power of eminent domain, under the provisions of sec. 14, art. 1 of the constitution, which provides that "The necessary use of lands . . . . to the complete development of the material resources of the state, . . . . is hereby declared to be a public use." (*Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426; *Washington Water Power Co. v. Waters,* 19 Ida. 595, 115 Pac. 682.)

In construing the above constitutional provision, this court has held it to be broader in its terms, and consequently entitled to receive a more liberal construction than constitutional provisions of a somewhat similar character, dealing with the subject of eminent domain, found in a majority of the various state constitutions; which liberal construction has also been justified by this court in view of the varied industries of the state, coupled with their rapid and phenomenal development. (*Connolly v. Woods,* 13 Ida. 591 (598), 92 Pac. 573.) In effect, under the above constitutional provision this

court has held that private property may be taken under the power of eminent domain for any use necessary to the complete development of any of the material resources of the state, upon the payment of a just compensation therefor, to be ascertained in a manner prescribed by law.

Upon a former hearing (*Blackwell Lumber Co. v. Empire Mill Co.,* 28 Ida. 556, 155 Pac. 680) this court held that the respondent company is vested with the power of eminent domain, and that the allegations of its complaint stated a cause of action. Just previous to the pronouncement of the opinion of this court, wherein it so held, the Shoshone Railway Company was organized by the officers of the Empire Mill Company, the appellant herein, and the land sought to be condemned by the respondent company was by the Empire Mill Company conveyed to the Shoshone Railway Company. The Empire Mill Company immediately thereafter filed its answer to respondent's complaint in this action, denying the necessity for the construction of the proposed railroad and for the appropriation and condemnation of the land sought to be taken by the respondent, alleging an appropriation of the lands sought to be condemned by the Empire Mill Company for railroad use, and alleging in substance and effect that the respondent company surreptitiously, wrongfully and unlawfully went upon the lands of appellant, and unlawfully constructed thereon a temporary logging railroad, without the consent and against the protest of the appellant, which acts constituted a bar to the proceedings brought by the respondent company in condemnation, and that said railroad so constructed thereby became the property of the Empire Mill Company, and was by it, together with the right of way, conveyed to the Shoshone Railway Company. It further appears that shortly after the respondent filed its complaint in the original action it also filed its notice of *lis pendens.* When the respondent company filed its original complaint, notice was given by it for the appointment of commissioners to assess and determine the damages accruing to the appellant by reason of the condemnation and appropriation of the lands sought to be taken.

On the issues made by the pleadings a hearing was had, pursuant to notice, on May 25, 1916, at Wallace, in the district court of the first judicial district for Shoshone county, Hon. John M. Flynn presiding, for the purpose of determining whether or not the Blackwell Lumber Company was entitled to the appointment of commissioners and to have entered a decree of condemnation for the purchase of the land sought to be taken.   After hearing the testimony that is presented upon this appeal the district court made its findings of fact and conclusions of law, and entered its judgment, wherein it was adjudged and decreed that the respondent company was entitled to condemn a strip of land across the lands of the appellant company for a right of way for a temporary logging railroad, as prayed for in its complaint, and thereupon the court appointed three commissioners pursuant to notice, as provided by law, to assess appellant's damages; from which judgment an appeal was immediately taken to this court, followed by an application on behalf of appellants for an order staying all further proceedings pending a final determination of this appeal, which order was by a majority of this court granted.   (*Blackwell Lumber Co. v. Empire Mill Co.*, 29 Ida. 236, 158 Pac. 793.)

For a reversal of this case, counsel assigns and relies upon thirty-nine separate assignments of error, and nineteen subdivisions of assignments of error, all of which we have carefully considered, but which we will not discuss *seriatim.* These assignments of error in the main are that the evidence was insufficient to support the findings of fact and conclusions of law made by the trial court; that the findings of fact and conclusions of law are insufficient to support the judgment; that the court erred in admitting certain evidence over the objection of counsel for appellant and in its refusal to admit certain evidence offered by appellant, in admitting certain evidence offered by respondent, in refusing to strike out and in striking out certain evidence during the course of the trial. In addition to these assignments of error, appellant makes the general assignment that the court erred in its failure to make

findings of fact upon all of the material issues raised by the pleadings.

In our opinion there are but four controlling questions involved in this present appeal:

First, whether there was sufficient legal evidence introduced at the trial to establish a necessity for the construction of the temporary logging railroad and for the condemnation of the lands sought to be taken by the respondent company for that purpose.

Second, whether the lands sought to be taken were already appropriated to a public use, prior to the commencement of the action to condemn by the respondent company.

Third, whether the transfer of the lands sought to be condemned and appropriated by the respondent company to the Shoshone Railway Company, a common carrier, by the appellant company, defeated or in any manner affected the right of respondent company to condemn said lands for right of way purposes, or affected the necessity for it to take and condemn said lands in order to remove and manufacture its timber from its lands described in its complaint; and

Fourth, whether the logging railroad constructed by the Blackwell Lumber Company upon the lands of the Empire Mill Company became the property of the Empire Mill Company under the facts of this case.

Directing our attention to the first proposition, which we do not deem necessary to discuss at length, the question of necessity is one of fact, and where there is a substantial conflict in the evidence, the findings of the trial court will not be disturbed. In passing, however, we might say that the record conclusively shows that there is no other feasible way whereby either the appellant or respondent will be able to move the timber from their respective holdings, except over a railroad to be constructed along the route sought to be taken by the respondent herein, as was said by Mr. Blackwell, president of the respondent company, among other things, in his testimony (and upon this point he is corroborated by witness, Mr. Connolly), in answer to the following questions propounded by counsel for respondent:

"Q. You may state to the court what is the feasible way of marketing that timber [referring to the timber upon the lands of the Blackwell Lumber Company], getting it out of there in the form of sawlogs and transporting it to market?

"A. Why, that is the natural and feasible route, and the only one.

"Q. Which?

"A. The way our road is built up the ravine."

Mr. Lawrence F. Connolly also testified that the right of way down through the three forty-acre tracts over which the respondent has in part constructed its railroad was the only feasible way for getting out the timber on the lands of the Empire Mill Company, and the court in its seventh finding of fact, in harmony with this evidence, finds:

"That there is but one feasible and practicable way to move and utilize said timber which is by use of such railroad. . . . . That the only practicable and feasible route across said lands for said railroad is the route described in plaintiff's complaint, . . . . and it is necessary in order to build and operate said railroad, and in order that said timber may be removed and manufactured, for plaintiff to acquire said right of way across said lands herein sought to be condemned."

Coming now to the second proposition, Lawrence F. Connolly, manager, secretary and treasurer of the Empire Mill Company, among other things, testified that the lands sought to be condemned by the respondent company were appropriated for railroad use by the Empire Mill Company some time in 1913; that said appropriation was made by him as an officer of the Empire Mill Company for the purpose of constructing a railroad to transport the timber owned by the Empire Mill Company along practically the identical route over which the respondent company has constructed its railroad; that said appropriation was made by running out the lines, placing stakes along the right of way, and blazing out a part of the trails; that nothing further has been done by the appellant company or on its behalf looking to the construction of its proposed railroad. No right of way was procured over the lands of the respondent company or over the

lands of one Magee, located between the lands of the appellant company and the Chicago, Milwaukee & St. Paul Railroad, and no contract or understanding was had with said latter company for junction connections with their line.   It further appears that there is no evidence of any official action by the directors of the Empire Mill Company appropriating or adopting such right of way, which action would appear to us to be imperative, in that the power to locate a railroad by a corporation is vested in its board of directors, and that some corporate action by the Empire Mill Company was absolutely necessary in order to constitute a valid appropriation for a public use of the lands sought to be taken in this action, so as to defeat the right of the Blackwell Lumber Company to make an appropriation of such land for a public use, and it further appears that said company for many years has not been engaged in the operation of sawmills, and is a holding company of timber lands only.   The respondent company when it went upon the land of the appellant company found it merely idle land, wholly unimproved, and devoted to no public use.

It may be contended that by reason of the ownership of the lands sought to be taken being vested in fee in the Empire Mill Company, it was not required to make an appropriation over its own lands for a public use, or adopt one made in its behalf by one of its officers.   If, as a matter of fact, the lands sought to be taken had been actually and in good faith appropriated or devoted to a public use by the Empire Mill Company, prior to the commencement of this action to condemn by the Blackwell Lumber Company, and the proof established that fact, there is no question but what the contention would be correct; but the facts do not bear out this contention.   The facts as disclosed by the entire record, relating to the purported appropriation by the appellant company of the lands sought to be taken by the respondent company, support, in our opinion, the eleventh finding of fact made by the trial court, which is as follows:

"That the property sought to be condemned [by the Blackwell Lumber Company] is not already appropriated to a rail-

road use by the defendant [Empire Mill Company] or any other person or company, and is not appropriated to any public use. That the making of blazes and setting of stakes by Lawrence Connolly in 1913 as alleged and claimed did not constitute an appropriation of a right of way over said lands herein sought, or any lands in behalf of the Empire Mill Company, and no part of said land has been appropriated by the Empire Mill Company, or any other person or company prior to the commencement of this action.''

Under the constitution and laws of this state, as construed by the decisions of this court, the lands of appellant were subject to condemnation, and were not devoted to a public use (*Portneuf Irr. Co., Ltd., v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046; *Postal Tel. Cable Co. v. Oregon Short Line R. R.,* 104 Fed. 623), and the principles of law announced in the foregoing decisions are, in our opinion, borne out by the following decisions:

As was held in the case of *Williamsport etc. Co. v. Phila. etc. R. Co.,* 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220, the making of a location so as to give title to one railroad company as against another involves some corporate action on the part of the company, establishing and adopting some definite route. An engineer alone by surveying and marking the line cannot make a location and effect a valid appropriation of the land. ''An engineer may make explorations in advance of the location, or he may re-mark the line or adjust the grades after the adoption of a location, but an engineer alone cannot locate a railroad so as to give title to the company that employs him. He is not the company. The right of eminent domain does not reside in him.''

We think that the case reported in 41 Fed. 293-300, *Colorado Eastern Ry. Co. v. Union Pac. Ry. Co.,* may in many respects on principle be applied to the case at bar. It appears that the Burlington and Missouri Valley Railroad Company was about to build into Denver and was seeking terminal facilities. The superintendent of the Colorado Eastern Railway Company was instructed to buy up such ground as was necessary in order to keep its competitor from getting into

the Union depot, which he did.   The court in its opinion, among other things, said:

"Without imputing to the defendant company the selfish and indefensible motive of being actuated in the acquisition of this land by a desire to obstruct the Burlington road's access to the Union depot, the very utmost that can be conceded to the defendant is that it entertained the belief that this piece of ground might become necessary to the full accommodation of its business in the future, and that it expects to so apply it.   This is but a prospective dedication, which may or may not ever be made.   If the defendant were seeking to condemn this property upon a prospective increase of its business, 'it should be established beyond reasonable doubt that such increase will occur.' (*Rensselaer etc. R. R. Co. v. Davis,* 43 N. Y. 145.)   While not holding defendant to the same rigorous rule as if it were seeking to condemn this property, yet 'no one can blink so hard as not to see' from the evidence as a whole that the defendant has not for five years done any other act looking to the subjection of this piece of ground to its use; and, if it is held exempt from the exercise of the right of eminent domain, it rests for its foundation upon conjecture, or a contingency that no court can say with assurance will ever arise. . . . . In view of its greater necessity to the petitioner, as already demonstrated, I feel constrained to hold, both on reason and authority, that this mere prospective use by defendant should yield to the more immediate necessities of the petitioner. . . . . Mere priority of acquisition or even of occupation gives no exclusive right, except in so far as the condemnation trenches upon the greater necessities of the other franchise. (*East St. L. C. Ry. Co. v. East St. L. U. Ry.,* 108 Ill. 265; *Lake S. & M. S. Ry. Co. v. Chicago & W. I. R. Co.,* 97 Ill. 506.)"

In the case of *Butte, Anaconda & Pacific Ry. Co. v. Montana Union Ry. Co.,* 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298, the court says:

"One public corporation cannot take the lands or franchises of another public corporation in *actual* use by it unless expressly authorized to do so by the legislature.   But the

lands of such a corporation not in actual use may be taken by another corporation, authorized to take lands for its use *in invitum*, whenever the lands of an individual may be taken, subject to the qualification that there is a necessity therefor. (2 Wood R. R., p. 856.)

"We think this to be the true rule, and that opposing corporations may be limited to the enjoyment of that property in *actual* use by them, and that which is reasonably necessary for the safe, proper and convenient management of their business, and the accomplishment of the purposes of their creation. (*Mobile & G. R. Co. v. Alabama M. R. Co.* (87 Ala. 501, 6 So. 404.)"

In the case of *Chicago & M. Electric R. Co. v. Chicago & N. W. Ry. Co.*, 211 Ill. 352, 71 N. E. 1017, where the electric company sought to condemn a part of the unused lands of the Northwestern company, it was claimed by the Northwestern company that the lands were appropriated to a public use and condemnation would not lie, but the court said:

"It is possible, it is true, that the Northwestern company may, at some remote time in the future, need for public use the 25-foot strip which petitioner seeks to condemn, or a like space elsewhere at that station. It is evident that it does not need it now, and will not need it in the immediate future. Petitioner needs it now for a present public purpose, for which it has the power to acquire a right of way by condemnation. The remote and uncertain needs of the Northwestern company must yield to the present and certain right of appellant."

Involved in the third proposition is the transfer of the lands sought to be condemned to the Shoshone Railway Company, a common carrier, subsequent to the bringing of the action by the respondent and after the filing of its *lis pendens*. It also appears from the record that the respondent company had constructed its railroad from a point on the Chicago, Milwaukee & St. Paul Railroad, over lands lying between the lands of said railroad company and the lands of the appellant to and over lands of the appellant company to within a distance of approximately two hundred feet of respondent's

lands, when the Shoshone Railway Company was organized by the officers of the appellant company.

It is the contention of counsel for appellant that the incorporation of the Shoshone Railway Company, as a common carrier, although subsequent to the bringing of this action by the Blackwell Lumber Company, and a conveyance to it by the Empire Mill Company of its right of way for railroad use over the lands sought to be condemned by the Blackwell Lumber Company, defeated the right of the Blackwell Lumber Company to appropriate and condemn said land for a temporary logging railroad, upon the theory that the property sought to be condemned was already devoted to a more necessary and important public use. Under the facts in this case we cannot concede the correctness of this contention. The Empire Mill Company, prior to the bringing of this action by the Blackwell Lumber Company, had made no valid appropriation of the lands sought to be condemned for a public use, and the same was not by it devoted to a public use. The mere conveyance of the right of way selected by the Blackwell Lumber Company, over which it intended to construct its temporary logging railroad, by the Empire Mill Company to the Shoshone Railway Company, a common carrier incorporated by the officers of the Empire Mill Company, ostensibly for the purpose of defeating the right of the Blackwell Lumber Company to condemn, and thereby complete its railroad, would not operate in and of itself to defeat the right of the Blackwell Lumber Company to maintain this action, unless we adopt the theory advanced by counsel for appellant, which involves the fourth and last proposition, that under the facts in this case the Blackwell Lumber Company when it went upon the lands of the Empire Mill Company and constructed a portion of its railroad became a naked trespasser, and as such could initiate no right to said land or to its use. This principle of law may be conceded, but it does not necessarily follow that it lost its right to condemn, and that being such naked trespasser the logging railroad constructed by it upon the lands of the Empire Mill Company became the property of the latter company. While the authorities are

not uniform upon this question, we think the correct rule is as announced in Lewis on Eminent Domain, vol. 2, sec. 759: "Persons and corporations vested with the power of eminent domain have no more right than natural persons to enter upon private property before taking the steps prescribed by law to obtain possession. If they do, the owner may have his common-law remedies of trespass or ejectment, or he may resort to equity and enjoin the invasion or use of his land. But, in all such cases, the persons making the entry may, by proper proceedings, condemn the property entered upon, and so perfect their right to its possession and enjoyment."

In the case of *Secombe v. Milwaukee & St. Paul R. R. Co.*, 90 U. S. (23 Wall.) 108–118, 23 L. ed. 67, in relation to the taking of private property by a railroad company under the power of eminent domain, the court says that "Prior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use. If the company occupied the land before condemnation without the consent of the owners . . . . they are liable in trespass."

And again, in the case of *Stevens v. Connecticut Co.*, 86 Conn. 36, Ann. Cas. 1913D, 597, 84 Atl. 361, the court says: "The fact that the defendant, without authority, entered upon the plaintiff's land in question, and made excavations as above stated, and that suits for damages for said acts are still pending, does not prevent the defendant from proceeding to condemn the land under the provisions of chapter 101 and sec. 3687. We have no occasion to decide what damages the plaintiff may recover in said pending actions, either before or after a condemnation of the land. The question before us is whether these facts constitute a bar to condemnation proceedings. The authorities are that they do not."

And in the notes to American Annotated Cases 1913D, 601, we find the following rule announced, supported by numerous cases: "In harmony with the reported case it is generally held that where there has been an unlawful entry on land and a suit is pending to recover damages therefor, such suit is no

bar to the right of the trespasser to institute condemnation proceedings to obtain title to the land in question.''

In the case of *Jacksonville etc. R. Co. v. Adams,* 28 Fla. 631, 10 So. 465, 14 L. R. A. 533, the court held, where a railroad company having the power of eminent domain entered on land unlawfully and constructed a railroad track thereon, on recovery of a judgment by the land owner for damages and ejectment against the railroad company, that the appellate court could withhold its mandate of possession to allow a reasonable time for the institution and consummation of proper condemnation proceedings by the company, if there was no bad faith on the part of the company as to such proceedings.

The rule is again announced in 15 Cyc. 763, as follows: ''Where a corporation invested with the power of eminent domain enters upon land without the consent of the owner, express or implied, and places improvements thereon, and subsequently institutes proceedings to condemn the same land, the common-law rule that a structure erected by a tort-feasor becomes a part of the land does not apply, and the owner is not entitled to the value of the improvements thus wrongfully erected.''

The constitution and laws of this state in granting the power to appropriate private property to any particular public use restrict its grantee to take only such property, and for such length of time, as shall be actually necessary for such use, and inferentially requires the necessity to be proved as a fact. The respondent corporation seeks but a temporary use of the strip of land sought to be appropriated and condemned for the construction of its temporary logging railroad; and its complaint alleges that it ''will be able to remove from its lands and transport across the said right of way sought to be acquired in this action all of the timber which it desires to remove at this time in a very few months, and that the use sought of the lands of the defendant is therefore but temporary; that the plaintiff will not materially affect or injure the lands of the defendant, or injure the same at all.'' Upon this issue the trial court in its findings of fact found

"That the plaintiff [the respondent here] will be able to remove from its said lands hereinbefore described and transport all said timber across said right of way to be acquired in this action, within one year after it acquires said right of way." The court, however, in its judgment of condemnation fails to limit the time of the use of appellant's lands. In this respect we think the judgment should be amended, restricting the right to the use of the lands of appellant company to one year after it acquires the right to such use, and the trial court is hereby directed to amend its judgment in this respect.

Upon an examination of the entire transcript in this case, we are convinced that there is but one feasible way for the respondent company to remove its timber, cut and growing upon its lands described in its complaint, and that is by the construction of a temporary logging railroad over the right of way that it seeks to condemn over the lands of the appellant company. These lands are located in a mountainous section of this state, covered with growing timber of great value, which must either be transported to the mills of the respondent company, or other mills, to be manufactured into lumber, or left to lie upon the ground and decay or be subject to destruction by fires. The lands were not, prior to the construction of the temporary logging railroad by the respondent company, devoted to a public use or any use. Upon the lands of these companies, which may be reached by this railroad and an extension thereof, there are about ten million feet of growing timber, matured and ready to be manufactured. All of this timber can be transported to mills and manufactured into lumber over the railroad constructed upon this right of way, by reason of its location, which by agreement might be utilized by both companies without in any way seriously discommoding the appellant company. To deprive the respondent company of the right of condemnation would mean in effect the destruction of the timber growing upon its lands. To sustain the judgment of the trial court means the development of one of the material resources of the state, and making possible the trans-

portation and manufacture into lumber of between three and one-half and five million feet of valuable timber. The march of progress in the development of the material resources of this state would almost seem to justify the temporary use, upon just compensation being paid, of the lands of the appellant company, despite the owner's protest, in view of the great benefits, both direct and incidental, that will follow by reason of the construction of the temporary railroad, and we are of the opinion that under the facts in this case, and under the provision of the constitution of this state heretofore referred to, the power of eminent domain may be rightfully exercised.

In view of the conclusions reached by this court, it will be the duty of the commissioners heretofore appointed by the trial court to hear testimony, assess damages, and make their report as provided by sec. 5226, Rev. Codes, and upon the filing of said report showing the amount of damages that will be suffered by the owner of the property sought to be taken in this action, and the payment of the same to such owner or into court for the use and benefit of such owner, the respondent company will be authorized to enter into the possession and use of the lands sought to be condemned pending the final hearing (*Pyle v. Woods,* 18 Ida. 674, 111 Pac. 746; *Portneuf Irr. Co. v. Budge, supra*), or until the expiration of the time limited in the judgment to be corrected as herein indicated.

Finding no reversible error in the record, the judgment of the trial court upon amendment as herein indicated is sustained, and it is so ordered. Costs are awarded to appellant. (*Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co.,* 19 Ida. 492, 114 Pac. 19; *Rawson Lumber Co. v. Richardson et al.,* 26 Ida. 37, 141 Pac. 74.)

Sullivan, C. J., concurs.

MORGAN, J., Concurring.—Accepting the decision of the majority of this court in the case of *Blackwell Lumber Co. v. Empire Mill Co.,* 28 Ida. 556, 155 Pac. 680, as the law of

this case, I concur in the foregoing opinion. My views upon the right to exercise the power of eminent domain in cases of this kind are fully expressed in the dissenting opinion appearing in 28 Idaho, at page 582, 155 Pac. 680, and no useful purpose will be served by a reiteration of them at this time.